**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

EARLENE HINGSON,

        Plaintiff,

vs.                                                    Case No. 3:06-cv-524-J-32TEM

THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,

        Defendant.

## **ORDER**[1]

This case is before the Court on the Motion for Award of Attorney's Fees and Taxable Costs (Doc. 42) filed by the Plaintiff, Earlene Hingson ("Hingson"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.* Defendant, The Prudential Insurance Company of America ("Prudential"), has filed a response in opposition.[2] (Doc. 49.)

---

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically. However, it is intended to decide the motion addressed herein and is not intended for official publication or to serve as precedent.

[2] Along with its response in opposition, Prudential included the affidavit of Meredith Formon, an Appeals Specialist at Prudential. (Doc. 49.) Hingson filed a Motion for Leave to Respond to Affiant (Doc. 51.), and Prudential filed a response in opposition. (Doc. 52.) The Court has considered all of these filings.

## I. BACKGROUND

Hingson was formerly employed by PCS Phosphate as a payloader operator, a job involving the operation of heavy machinery and requiring physical strength, dexterity and mental acuity. (Doc. 20-3 at 23.) On February 3, 2004, Hingson stopped working due to self-reported right abdominal pain following gallbladder removal surgery. On April 12, 2004 Hingson filed a claim with Prudential, PCS Phospate's long-term disability (LTD) insurance coverage provider, for LTD benefits. (Doc. 18 at 3.) To qualify for LTD benefits, Prudential must determine that "[an applicant is] unable to perform the material and substantial duties of [applicant's] regular occupation due to [applicant's] sickness or injury."[3] (Doc. 1-1 at 11.) Prudential must also determine that the applicant has satisfied the Elimination Period, a 180-day period of continuous disability.[4] (Doc. 1-1 at 12.) Prudential denied Hingson's claim on September 20, 2004, finding no medical explanation for her ongoing subjective complaints of pain, uncovering no objective findings to support a decrease in functional capacity, and concluding that she should actually be more

---

[3] Prudential must also determine that "[applicant has] a 20% or more loss in [applicant's] indexed monthly earnings due to that sickness or injury." (Doc. 1-1 at 11.)

"Regular occupation" means "the occupation [applicant is] routinely performing when [applicant's] disability begins." (Doc. 1-1 at 11.)

[4] While Prudential concedes that its LTD Coverage Plan does not state that the Elimination Period begins on the date the applicant stops working, Prudential interprets the terms of its policy as such. (Doc. 33 at 25.)

functional as a result of taking her prescription medication.  (Doc. 20-3 at 11-18.)

On January 17, 2005, Hingson administratively appealed Prudential's decision and submitted additional medical records to Prudential.  (Doc. 18 at 5.)  Prudential denied her claim for the second time, finding no medical evidence to support total impairment from the time Hingson stopped working through the Elimination Period and determining that the prescribed medicine would not decrease her functional capacity. (Doc. 20-3 at 21.)  Upon the second denial of her claim, Hingson again administratively appealed Prudential's decision on April 8, 2005.  (Doc. 18 at 5.) Hingson submitted additional records, including a statement from Dr. Gonzales, who treated her from February 2004 to September 2004, and who indicated she was disabled and unable to return to work.[5]  (Doc. 18 at 5-6.)  On July 27, 2005, Prudential denied Hingson's claim for the third time, noting that the records did not support a continuous sickness or injury that would have precluded her from performing the material and substantial duties of her regular occupation during the Elimination Period. Prudential also determined that  Hingson's medications had not resulted in cognitive impairment.  (Doc. 20-3 at 23-25.)

Hingson made a final request for reconsideration by Prudential on January 20, 2006.  (Doc. 18 at 7.)  Along with her appeal, Hingson submitted additional medical records and a note from Dr. Hayden, a family physician who had monitored her

---

[5]  Dr. Gonzales' statement was signed by Stephanie Finnell, A.R.N.P.

3

chronic abdominal pain complaints from June 2005 to November 2005, and who confirmed she was taking a number of medications which prevented her from operating vehicles or using heavy machinery.[6] (Doc. 18 at 7.) Plaintiff further updated her appeal with a fibromyalgia assessment performed by Dr. Lloyd, her rheumatologist, who confirmed the presence of tenderness at 18 out of 18 points, an indicator for the condition.[7] (Doc. 18 at 7-8.) In evaluating Hingson's claim, Dr. Martin, Prudential's consultant, reviewed incomplete copies of Dr. Lloyd's records and stated that Dr. Lloyd's diagnosis was inconsistent with the American College of Rheumatology (ACR) criteria. Dr. Martin further found that even if Hingson did suffer from fibromyalgia, a fibromyalgia diagnosis supported a return to normal activities. (Doc. 18 at 9.) Prudential determined that the medical information on file did not document a significant impairment and discovered no objective findings of Hingson's complaints of subjective pain. Prudential concluded that Hingson did not suffer from an impairment that would preclude her from performing the material and substantial duties of her regular occupation. On June 1, 2006, Prudential notified Hingson that it had upheld its prior decisions to deny Hingson's claim for LTD benefits. (Doc. 17 at 13.)

---

[6] Dr. Hayden's statement was signed by Stephanie Finnell, A.R.N.P.

[7] Testing for fibromyalgia includes a physical examination in which the doctor tests for tenderness at 18 different pressure points. To meet the diagnostic criteria, the patient must exhibit tenderness in at least 11 of the 18 pressure points. (Doc. 33 at 16.)

4

Having exhausted her administrative remedies, Hingson filed a complaint in federal court on June 6, 2006, seeking payment of LTD benefits. (Doc. 1.) At the hearing on the parties' cross-motions for summary judgment, the Court made several inquiries: how much objective evidence of pain is required to support a determination of disability; whether Hingson had become disabled during the Elimination Period; and whether Prudential was required to follow up on a diagnosis it considered unclear. (Doc. 33). Based on the motions, the arguments made at the hearing and the administrative record, the Court determined this was a close ERISA case. Without any intimation as to the ultimate result, the Court terminated both motions for summary judgment without prejudice, remanded the case to Prudential for further consideration, and ordered Hingson to supplement the record with additional documents. (Doc. 34.) On remand, Prudential granted Hingson's request for LTD benefits. (Doc. 41-1.)

On December 5, 2007, Hingson filed a Motion for Award of Attorney's Fees and Taxable Costs (Doc. 42), which Prudential opposes (Doc. 49.)

## II. **STANDARD OF REVIEW**

A district court, in its discretion, may award a reasonable attorney's fee and costs to either party in an ERISA action. 29 U.S.C. § 1132(g)(1). "'The law provides no presumption in favor of granting attorney's fees to a prevailing claimant in an ERISA action.'" Wright v. Hanna Steel Corp., 270 F.3d 1336, 1344 (11th Cir. 2001) (citation omitted). The Eleventh Circuit lists five factors for determining whether to

award attorney fees in an ERISA action: (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions. Id. at 1344.  "'No one of these factors is necessarily decisive, and some may not be apropos in a given case, but together they are the nuclei of concerns that a court should address.'" Id. at 1345 (citation omitted).  A district court may, in its discretion, consider only those factors it deems important. See Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Alabama, 41 F.3d 1476, 1485 (11th Cir. 1995).

### III.     DISCUSSION

Hingson contends that an award of attorney's fees and costs is appropriate under 29 U.S.C. § 1132(g)(1) even though she was awarded benefits on remand and no judgment was entered in her favor. (Doc. 42 at 2-3 (citing Sullivan v. Continental Casualty Company, 2007 WL 1362923 (M.D. Fla. May 9, 2007)).)  Prudential argues that attorney's fees should not be awarded to Hingson because she is not a prevailing party and an award of attorney's fees secondary to a remand has been ruled premature and inappropriate by many circuits. (Doc. 49 at 2, 4.)  The Eleventh Circuit

has never addressed whether a party in an ERISA case can recover its attorneys' fees when the case resolves before a final judgment in the federal action. However, the undersigned has held that a party may be entitled to attorney's fees in such a situation. See Sullivan v. Continental Cas. Co., No. 3:05-cv-491-J-32MMH, 2007 WL 1362923, at *1 (M.D. Fla. May 9, 2007); Thomas v. CSX Corp., No. 3:03-cv-729-J-32MCR, 2005 WL 2756214, at *2 (M.D. Fla. October 25, 2005). See also, Sabina v. American General Life Ins. Co., 856 F.Supp. 651, 656 (S.D. Fla. 1992). The Court assumes arguendo that it would award attorney's fees if the five-factor test announced by the Eleventh Circuit in Wright favored doing so.

Prudential, however, further contends that the outcome of the five-factor Wright test weighs against an award of attorney's fees here. (Doc 49 at 5.) Therefore, the Court must apply the five-factor test to determine whether an award of attorney's fees is appropriate in this case.

Regarding the first factor (culpability or bad faith), in its Order of remand, the Court "deem[ed] this a close ERISA case, with conflicting and confusing medical evidence" and therefore remanded it to Prudential for further consideration "[w]ithout any intimation as to the ultimate result." (Doc. 34 at 1.) Because the record before the Prudential administrator was not complete, the Court permitted Hingson to supplement her medical records, which she did, and it was upon review of Hingson's complete records that Prudential determined to award Hingson LTD benefits. Under

7

these circumstances, the Court finds that Prudential's behavior does not rise to the requisite level of culpability or bad faith such as would support a fee award.[8] Regarding the third factor (general deterrence), the Court recognizes that there is deterrent value in awarding attorney's fees in cases in which defendants have acted culpably. In a case such as this one, however, an award of attorney's fees might have a deleterious effect because defendants like Prudential "may be reticent to settle such claims or change [their] minds and pay benefits for fear of having to pay the opposing party's attorney's fees." See Thomas, 2005 WL 2756214, at *2.

This Court has not hesitated to award attorney's fees in ERISA cases when it found it appropriate to do so. See, e.g., Sullivan, 2007 WL 1362923; Thomas, 2005 WL 2756214; Brand v. AT&T Broadband Disability Plan, No. 3:06-cv-98-J-32MCR, 2008 WL 1766906 (M.D. Fla. Apr. 15, 2008). However, assessing the five factors in their totality in this case,[9] the Court in its discretion concludes that Hingson is not

---

[8] The Sullivan case is distinguishable from this case. In Sullivan, the Court found that defendant bore culpability and awarded attorney's fees to plaintiff where, despite plaintiff's alleged ophthalmological disabilities, defendant failed to have any ophthalmologist review plaintiff's condition taking into account plaintiff's correct job description. 2007 WL 1362923, at *1-2. In this case, where Hingson alleged right quadrant pain, Prudential completed a vocational assessment (Doc. 25 at 8) and arranged for qualified medical staff to review Hingson's correct job description at the administrative level. (Doc. 25 at 9.)

[9] The Eleventh Circuit noted in Byars v. The Coca-Cola Co., 517 F.3d 1256, 1268 (11th Cir. 2008), that "so long as a court's analysis takes these [five factors] into account, it does not abuse its discretion by not enumerating each and every one." In this case, the second, fourth, and fifth factors are not particularly helpful to the analysis.

entitled to an award of attorney's fees.

Accordingly, it is hereby **ORDERED**:

Plaintiff's Motion for Award of Attorney's Fees and Taxable Costs  (Doc. 42.) is **DENIED**.  The Clerk should close the file.

**DONE AND ORDERED** at Jacksonville, Florida, this  5th  day of May, 2008.

_____
TIMOTHY J. CORRIGAN
United States District Judge

e.
Copies to:
Counsel of Record